503 S.E.2d 452

**In the Matter of James T. KALYVAS, Respondent.**

**No. 24796.**

Supreme Court of South Carolina.

Submitted April 14, 1998.
Decided June 1, 1998.

James T. Kalyvas, Sarasota, Florida, Pro se.

Disciplinary Counsel Henry B. Richardson, Jr., and Senior Assistant Attorney General James G. Bogle, Jr., Columbia, for the Office of Disciplinary Counsel.

PER CURIAM:

In this attorney disciplinary matter, respondent and disciplinary counsel have entered into an agreement under Rule 21 of the Rules for Lawyer Disciplinary Enforcement (RLDE) contained in Rule 413, SCACR. In the agreement, respondent admits he has committed misconduct and agrees to disbarment. We accept the agreement and disbar respondent.

### Federal Conviction

In December 1995, a federal district court jury in Oklahoma convicted respondent of wire fraud and causing a criminal act in violation of 18 U.S.C. §§ 2(b) and 1343. The jury also convicted a co-defendant, Mulk Raj Dass, of five counts of conspiracy and wire fraud. Dass and respondent engaged in a scheme in 1993 to defraud Ronald Kirkpatrick and others doing business as Oklahoma Feldspar Corporation (Feldspar), a mining company.

Dass and respondent promised to obtain a "financial guarantee bond" that would enable Feldspar to secure a $2 million loan. Feldspar placed $100,000 in respondent's trust account, of which Dass and respondent agreed to return $90,000 promptly if a guarantee bond was not obtained. No such bond was obtained. Respondent spent nearly the entire amount on his personal expenses within days of receiving it.

In May 1996, a federal district judge in Oklahoma sentenced respondent to eighteen months in prison, and ordered him to pay $15,000 in restitution to the victims and serve three years of supervised release following his prison term. The judge found that the total loss attributable to respondent as a result of his involvement in the Feldspar scheme was $75,000, but concluded respondent did not have the ability to repay that amount.[1] The Tenth Circuit Court of Appeals affirmed respondent's conviction and sentence. *United States v. Kalyvas,*

---

1. The judge also found that respondent's involvement in two other fraudulent schemes, including the Robert Kohn matter described below, caused the victims to lose an additional $246,900.

Nos. 96–5176 and 96–5144, 1997 WL 651761 (10th Cir. Oct. 21, 1997) (unpublished opinion). This Court temporarily suspended respondent from the practice of law on July 11, 1996, as a result of the conviction. *In the Matter of Kalyvas,* 322 S.C. 531, 473 S.E.2d 448 (1996).

## Robert Kohn Matter

Respondent agreed to act as escrow agent in a business deal between Dass and Robert Kohn of New Jersey, who represented a group of investors. Dass and Kohn's investment group hoped to secure $650 million in bonds to invest in distressed real estate. Dass would receive a commitment fee of $637,200. The agreement called for Kohn's investment group to place $187,500 in respondent's trust account as its share of the commitment fee. If the bonds were not issued within thirty days, respondent agreed to return the advanced funds promptly to Kohn's investment group.

An analysis of respondent's trust account showed the balance was $110.52 on January 31, 1994. Kohn's investment group deposited a total of $187,482.50 in the account from February 4–9, 1994. On February 4, after the group had deposited $100,000 into the account, the account had a balance of only $39,831.43, indicating that respondent had disbursed some of the group's money without its permission. The account balance at the end of February 1994 was $9,471.20. Respondent did not hold the group's money in trust, but disbursed some funds to Dass and paid other expenses of his own, including rent and one check written directly to himself.

No bonds were ever issued on behalf of Kohn's investment group. When Kohn filed a disciplinary complaint on November 27, 1995, respondent had not returned any of the advanced funds to the investment group.

## Wilkie Corporation Matter

Respondent maintained a law practice in Sarasota, Florida. He was licensed to practice law in South Carolina, but not in Florida. In 1994, respondent agreed to serve as counsel for Infinity International Investments, Ltd., a Louisiana corporation headed by Dass. Dass entered into an agreement with Nikkei International, Inc., a Delaware corporation, and the

Wilkie Corporation of California. Nikkei International held at least $2 million in standby letters of credit issued by a Mexican bank. In the agreement, Dass pledged to help Nikkei International obtain up to $50 million in financing for projects in Mexico by locating entities willing to make one-year loans on the basis of Nikkei International's letters of credit. Dass would retain a portion of the loan proceeds as his fee.

The Wilkie Corporation agreed to place $100,000 in respondent's trust account to demonstrate the legitimacy of the standby letters of credit held by Nikkei International. In the agreement, Dass promised to find an entity willing to make a written commitment to loan $2 million to Nikkei International on the basis of its letters of credit within three days of receiving $100,000 from the Wilkie Corporation. Dass further agreed to return the $100,000 in full after Nikkei International had obtained loans with a face value of $50 million.

The Wilkie Corporation transferred $100,000 to respondent's trust account on June 1, 1994. Dass failed to secure any loan commitments and no loans were ever obtained. The Wilkie Corporation demanded the return of its funds from respondent. Respondent first promised to return the money by August 24, 1994, and then by September 2, 1994. Respondent had returned only $50,000 to the Wilkie Corporation when a disciplinary investigation into this matter began in October 1994. Respondent returned the remaining $50,000 to the Wilkie Corporation in December 1994.

An investigation revealed that respondent wrote checks from his trust account to pay personal expenses, including rent and expenses for his daughter at college, family members, West Publishing Company, and a restaurant. Respondent's trust account balance was $500 prior to the transfer of $100,000 from Wilkie Corporation. Some checks written on the account by respondent during June 1994 were returned due to insufficient funds, and the trust account balance was $110.33 on June 30, 1994.

## Conclusion

Respondent admits he has committed misconduct in this matter. He admits he has been convicted of a crime of moral

turpitude or a serious crime. Rule 8.4(b), (c), and (d) of the Rules of Professional Conduct (RPC) contained in Rule 407, SCACR; Rule 7(a)(4), RLDE. Respondent admits he has engaged in conduct tending to pollute the administration of justice and bring the courts and legal profession into disrepute. Rule 8.4(e), RPC; Rule 7(a)(5), RLDE. In addition, respondent admits violating the oath of office he took upon the admission to practice law in this state. Rule 7(a)(6), RLDE.

Respondent further admits he did not represent his clients in a competent manner, and wrongfully assisted a client in conduct he knew to be criminal or fraudulent. Rules 1.1, 1.2(d) and (e), RPC. Respondent admits he failed to keep funds belonging to another separate from his own funds, and he failed to promptly render a full accounting regarding the status of those funds to his clients and interested third parties. Rule 1.15(a) and (b), RPC. He admits he failed to promptly comply with reasonable requests for information. Rule 1.4(a), RPC. Finally, respondent admits he has engaged in the unauthorized practice of law in another jurisdiction. Rule 5.5(a), RPC.

Respondent is hereby disbarred. Respondent's request to make his disbarment retroactive to July 11, 1996, the date of his temporary suspension, is denied.

Within fifteen (15) days of the date of this opinion, respondent shall file the affidavit required by Rule 30(g), RLDE. In addition to all other requirements respondent must meet to be reinstated under Rule 33, RLDE, no petition for reinstatement shall be accepted until respondent has filed proof that he has made full restitution to all institutions and individuals who have lost money as a result of his fraudulent acts or mishandling of trust funds, to include restitution to the Lawyer's Fund for Client Protection for any payment it may make.

DISBARRED.